STATE OF IOWA, Appellee, v. JOHN J. O'BRIEN and HARRY W. SUMMERS, Appellants.

Criminal law: BURGLARY: BREAKING: CIRCUMSTANTIAL EVIDENCE.
1  Where the only reasonable inference from the proven circumstances is that there was an actual breaking, a conviction for burglary will not be set aside because of the absence of direct evidence on the subject.

Same: NOTICE OF ADDITIONAL EVIDENCE: RETURN OF SERVICE: REVIEW.
2  The return of service of notice of the taking of additional evidence in a criminal case, stating that the sheriff served the same by "reading said notice to each of said defendants and delivering them a true copy thereof" was a sufficient return to show complete service on each defendant, although it would have been more exact if· stating that a copy was delivered to each defendant; and where there was no attempt to bring the claimed defective notice fairly to the attention of the trial court it will not be considered on appeal.

Same: WITNESSES: INDICTMENT: VARIANCE IN NAME. The fact that
3  the surname of a witness, who was before the grand jury, was not properly spelled on the back of the indictment to which his testimony was attached will not justify the rejection of his evidence, where his identity is clearly ascertainable from his evidence and his name as actually written on the indictment.

*Appeal from Page District Court.*—HON. O. D. WHEELER, Judge.

TUESDAY, DECEMBER 10, 1912.

DEFENDANTS were indicted for burglary, under the provisions of section 4791 of the Code. Upon a plea of "not guilty," there was a trial to a jury. A verdict of "guilty" was rendered, and judgment entered thereon. The defendants appeal.—*Affirmed.*

*Earl R. Ferguson* and *C. R. Barnes,* for appellants.

*Geo. Cosson,* Attorney General, *John Fletcher,* Assistant Attorney General, and *L. H. Mattox,* County Attorney, for the State.

EVANS, J.—It is contended that the evidence was not sufficient to sustain the verdict. There was no testimony offered on the part of the defendants. On behalf of

1. CRIMINAL LAW: burglary: breaking: circumstantial evidence.
the state it was shown that the defendants were discovered in the store of the Essex Mercantile Company at about two o'clock on Sunday morning, September 10, 1911. A few minutes later they left the store, and were arrested. At the time of their arrest they were carrying away a sackful of merchandise, which had been taken from such store. They were strangers in the town. The specific manner in which, and the place at which, they entered the store was not disclosed at the trial. The proprietor and employees closed the store shortly after ten o'clock the night before. At that time they fastened all doors and windows and other openings. When the defendants were discovered in the building by the night watchman, he found no evidences of the place or manner of their entrance. It is urged here that there was therefore no evidence of a "breaking," within the meaning of the law. It would be more correct to say that the evidence was circumstantial on that question. The jury drew the inference that they must have entered the building in some manner, and that they could not have entered it without "breaking," within the meaning of the law, if all openings were closed the night before. This was the only possible inference, under the evidence, consistent with common sense. We readily reach the conclusion, therefore, that the evidence was not only sufficient to sustain the verdict at this point, but that it was very persuasive in its details. *State v. Sorenson,* 157 Iowa,—.

II. Three days before the trial the state served upon

the defendant written notice of an additional witness. The

2. SAME: notice of additional evidence: return of service: review.

sheriff made the following return of service thereon: "State of Iowa, Page County—ss.: I, George H. Whitmore, hereby certify that I am the sheriff of Page county, Iowa; that I served the above notice upon the defendants John J. O'Brien and Harry Summers on the 23d day of October, 1911, by reading said notice to each of said defendants and delivering them a true copy thereof. All of which was done in Page county, Iowa. George H. Whitmore, Sheriff." When such additional witness was called to the witness stand, the following occurred: .

Mr. Barnes: Before this witness testifies, I want to object to him as incompetent, for the reason that no proper notice was ever given of his testimony before the court, and no proper service was ever made of the notice upon the defendants. The notice is not properly served upon the defendants at all. (The notice is here produced and examined by the court.) The Court: The return is here, Mr. Barnes, that it was served by reading it to each of the said defendants and delivering them a true copy thereof. If there is anything defective, I do not see it, Mr. Barnes. Mr. Barnes: We make the objection for the sake of the record. I do not feel very sure. I make this objection, but I thought there was a possibility of a defect in there which I thought I saw. I am stating my record for that purpose. That is the only reason I am making the objection at this time. The Court: The record already shows here that the defendants, for the purpose of going to trial on this date, waived the fact that notice was served less than three days prior to the date of this trial. Mr. Barnes: No; there is no objection to that fact, your honor. The Court: Then the objection will be overruled.

The particular point which is now urged for reversal is that, although the return of the sheriff disclosed a reading of the notice to each of the defendants, it did not show delivery of a copy to each. The contention is that the return

showed a delivery of only one copy for both defendants. The most that can be said is that the return was possibly ambiguous. It would have been more exact, in a grammatical sense, if it had stated, not only that the notice was read to each defendant, but that a copy was delivered "to each of them." But grammatical exactness is not always available in the sheriff's office; nor is it legally necessary, though always desirable. We think the return, above quoted, could fairly be construed as showing a complete service upon each defendant.

There is a further reason why the point is not available to the defendants. It was not frankly made before the trial court. A perusal of the record, above quoted, shows that there was no attempt to bring to the attention of the court the point now urged. A formal objecion was made "for the sake of the record." The trial court stated: "If there is anything defective, I do not see it." Counsel for defendants appear to have been too deferential to the court to point out the defect which they now urge vigorously upon us. If the attention of the trial court had been directed to the defect claimed, it might have been cured, either by an amended return, or by evidence of the facts relating to the service. No claim is made that the service was in fact defective as distinguished from the return. The art of concealing a grievance from the trial court, in order to save it on the record for this court, will, perhaps, never be wholly lost to the profession. But the assistance which it can command in this court when it gets here will not be conspicuous for zeal. In the case before us the attention of the trial court appears to have been diverted to some extent from the real defect now complained of by the fact that the notice had not been served four days before the trial and this point had been waived by the defendant before the trial commenced. This fact is apparent from the remarks of the court appearing of record. We think the defendants are in no position to complain of the ruling involved at this point.

III. One of the witnesses for the state was L. Wiede-

man. He had been examined before the grand jury, and the
minutes of his testimony were attached to the
indictment. Signatures of the witnesses had
been waived. But the name of the witness
appeared on the back of the indictment as L. Wiedman.
Proper objection was made to his competency as a witness
because his name did not appear upon the back of the indict-
ment. We think the variance was not sufficient to justify
the rejection of the witness.

*3. SAME: wit-
nesses: indict-
ment: variance
in name.*

John Zachison also was a witness. The minutes of his
testimony before the grand jury were attached to the indict-
ment. His name appeared upon the back of the indictment
as John Zacherson. The same objection was made to this
witness. No question is raised as to the identity of either of
these witnesses as being the persons who testified before the
grand jury, and the minutes of whose evidence were attached
to the indictment. The question presented is solely one of
innocent mistake in spelling. We think the identity of the
witnesses was readily ascertainable from the minutes of their
evidence and from the names as actually written upon the
back of the indictment. We have never held such a variance
as here shown to be fatal. We do not think that such a hold-
ing is required by a fair construction of the statute, nor in the
interest of a fair trial to the defendants. If perfect spelling
were essential to legal procedure and pleading, the prospect
for the maintenance of law and order by criminal prosecutions
would become quite gloomy. In the record before us the name
of the first witness appears as ''Wiedeman,'' ''Wiedman,''
''Weideman,'' and ''Weidman.'' That of the second witness
appears as ''Zachison,'' ''Zacherson,'' ''Zachrison,'' and
''Zachesson.''

No other points are argued. We reach the conclusion
that the defendants had a fair trial, and that there is no rea-
sonable doubt of their guilt.

The judgment of the trial court is therefore—*Affirmed.*